IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ANTONIO CARABALLO,**                    Case No. 1:16 CV 3024

    Petitioner,                    Chief Judge Patricia A. Gaughan


    v.                    Magistrate Judge James R. Knepp, II

**CHARMAINE BRACY,**

    Respondent.                    REPORT AND RECOMMENDATION


### INTRODUCTION

*Pro se* Petitioner Antonio Caraballo ("Petitioner"), a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Charmaine Bracy ("Respondent") filed an Answer/Return of Writ (Doc. 5) and Petitioner filed a Reply/Traverse (Doc. 8-1).[1] The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated January 4, 2017). For the reasons discussed below, the undersigned recommends the Petition be denied.

### PROCEDURAL HISTORY

<u>State Court Conviction</u>

In December 2013, Petitioner was indicted by a Cuyahoga County Court of Common Pleas grand jury on three counts of trafficking in violation of Ohio Rev. Code § 2925.03(A)(1); four counts of trafficking in violation of § 2925.03(A)(2); five counts of drug possession in violation

---

1. Parties and Courts commonly use the terms "Return of Writ" and "Traverse" to refer to what the Rules Governing Section 2254 Cases now term an "Answer" and "Reply". *See* Rule 5 of the Rules Governing Section 2254 Cases.

of § 2925.11(A); one count of having weapons under disability in violation of § 2923.13(A)(3); one count of having weapons under disability in violation of § 2923.13(A)(2); and one count of possession of criminal tools in violation of § 2923.24(A). (Ex. 1, Doc. 5-1, at 3-16) (case number 580572). Attached to these counts were numerous specifications, including major drug offender, forfeiture, and firearm specifications. *See id.* Petitioner pleaded not guilty. (Ex. 2, Doc. 5-1, at 17).

Pursuant to a plea agreement, Petitioner pleaded guilty to the trafficking offense in Count 10 (with the state removing the forfeiture of a BMW specification, but the remaining firearm specification and forfeitures in place); and the having weapons under disability offense in Count 13 (with the attendant forfeiture specifications as charged). (Ex. 3, Doc. 5-1, at 18); *see also* Ex. 19, Doc. 5-1, at 66-67, 76-77 (transcript of change of plea). The state nolled the remaining counts of the indictment, and agreed to jointly recommend an aggregate ten-year prison sentence. *See* Ex. 3, Doc. 5-1, at 18; Ex. 19, Doc. 5-1, at 66-67, 76-77. Although the trial court noted it would accept the joint recommendation and impose the ten-year aggregate sentence (Ex. 19, Doc. 5-1, at 89) ("Just to clarify, I am going to impose the ten-year sentence on Count 10 . . . It will be nine years on the underlying sentence, prior to and consecutive to the one year on the firearm specification."), the sentence was not journalized at that time. Rather, the journal entry documented Petitioner's change of plea, and stated sentencing was "to be scheduled upon resolution in case 591528". (Ex. 3, Doc. 5-1, at 18).

On June 18, 2015, the trial court held a change of plea hearing for Petitioner and a co-defendant in case number 591528. (Ex. 19, Doc. 5-1, at 91-147). During that hearing, Petitioner pleaded no contest to various charges. *Id.* at 131-35. On June 30, 2015, the trial court held a joint sentencing hearing in the two cases. *Id.* at 148-86.

In a journal entry filed July 7, 2015 in case number 580572, the court imposed "a prison sentence of 10 years . . . on Count 10, to run concurrent with 3 year sentence on Count 13 for a prison term of 10 years in this case." (Ex. 4, Doc. 5-1, at 19); *see also* Ex. 19, Doc. 5-1, at 176-79 (sentencing transcript). In a *nunc pro tunc* journal entry filed October 20, 2015, the court corrected its prior entry to reflect that, on Count 10, "a prison sentence of 9 years is imposed on the underlying charge to run consecutive with 1 year on the fire arm [sic] spec., to run concurrent with 3 year sentence on Count 13 for a prison term of 10 years in this case." (Ex. 5, Doc. 5-1, at 21).

Delayed Direct Appeal

On November 13, 2015, Petitioner, *pro se*, filed an untimely notice of appeal with the Ohio Eighth District Court of Appeals. (Ex. 6, Doc. 5-1, at 23). He also filed a motion for leave to file a delayed appeal, arguing the failure of the trial court to inform him of his right to appeal denied him due process and equal protection under the law. (Ex. 7, Doc. 5-1, at 28-32). On December 16, 2015, the appellate court summarily denied Petitioner's motion, and dismissed the case. (Ex. 8, Doc. 5-1, at 33-34).

Petitioner filed a timely notice of appeal with the Ohio Supreme Court. (Ex. 10, Doc. 5-1, at 35-36). In his memorandum in support of jurisdiction, he asserted a single proposition of law:

> Is an Appellant deprived of Due Process and Equal Protection under the Ohio and U.S. Constitutions when he is deprived of his right to an appeal by the trial court's failure to inform him of his appellate rights and relate [sic] right to counsel under Crim.R. 32(B)?

(Ex. 11, Doc. 5-1, at 37-44). The state filed a waiver of memorandum in response. (Ex. 12, Doc. 5-1, at 45). On April 20, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Ex. 13, Doc. 5-1, at 46).

## FEDERAL HABEAS CORPUS

The instant Petition was timely filed in December 2016, raising a single ground for relief:

3

**GROUND ONE**: Petitioner was deprived of Due Process and Equal Protection when he was denied a delayed appeal after trial court and counsel failed to apprise him of his right to appeal and his right to counsel on that appeal.

**Supporting Facts**: Petitioner was never informed of his appellate rights by the court or counsel and was then denied a delayed appeal.

(Doc. 1, at 5).

Respondent filed an Answer, arguing Petitioner's sole ground is procedurally defaulted, non-cognizable, and fails on the merits. (Doc. 5). Petitioner filed a Reply, contending he can show cause and prejudice to overcome any default, and his ground for relief has merit. (Doc. 8-1).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213

4

F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

DISCUSSION

Procedural Default

Respondent first asserts Petitioner's sole ground for relief is procedurally defaulted due to his failure to timely present it to the state courts. Respondent contends that, because this claim involves facts that could be determined on the record, Petitioner was required to present it in a timely direct appeal. Petitioner responds, noting "Respondent claims that Petitioner should have brought the fact that he was never informed of his right to an appeal and counsel on that appeal [i]n a timely filed direct appeal. . . . The reasoning is absurd; a bizarre argument analogous to the familiar 'Catch 22.'" (Doc. 8-1, at 5). The undersigned recommends the Court find Petitioner's claim exhausted and reach a merits determination.

Petitioners must exhaust state court remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied when a petitioner has given "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

Petitioner presented his sole constitutional ground for relief to the state courts. In both his motion for leave to file a delayed appeal with the Ohio Eighth District Court of Appeals and his

memorandum in support of jurisdiction to the Ohio Supreme Court, Petitioner cited the Constitution and federal case law regarding appellate review. *See* Ex. 7, Doc. 5-1, at 28-32; Ex. 11, Doc. 5-1, at 37-43. To the Ohio Supreme Court, Petitioner presented the same argument he now presents here: he was "deprived of Due Process and Equal Protection under the Ohio and U.S. Constitutions when he [was] deprived of his right to an appeal by the trial court's failure to inform him of his appellate rights and relate[d] right to counsel under Crim.R. 32(B)". (Ex. 11, Doc. 5-1, at 38). Petitioner thus gave the highest court in the State of Ohio a fair opportunity to rule on the issue. *See McIntosh v. Hudson*, 632 F. Supp. 2d 725, 735-36 (N.D. Ohio 2009) (finding due process claim regarding denial of right to appeal "came into existence" on the date the motion for leave was denied, and was properly exhausted by the petitioner raising the constitutional issue to the Ohio Supreme Court).

Related to exhaustion is the issue of procedural default. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Lundgren v. Mitchell,* 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977)); *see also Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Second, a petitioner may procedurally default a claim by failing to raise the claim in state court, and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan*, 526 U.S. at 847.

Respondent contends denial of leave to file a delayed appeal under Ohio Appellate Rule 5(A) is an adequate and independent basis upon which to foreclose review of a federal habeas

claim, citing *Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011). In *Stone*, the Sixth Circuit held, contrary to prior precedent, "a petitioner's failure to follow Ohio Rule of Appellate Procedure 5(A) can serve as the basis for a procedural default of a petitioner's habeas claims." *Id.* at 348.

However, Petitioner can show cause to overcome that default in that he was not advised of his right to appeal. *See Jacobs v. Mohr*, 265 F.3d 407, 419 (6th Cir. 2001); *Wolfe*, 267 F. Supp. 2d at 746-50; *Walker v. Warden, Lake Erie Corr. Inst.*, 2016 WL 1019258, at *5 (S.D. Ohio) ("The court concludes that the trial court's failure to inform Petitioner of his appellate rights is cause for Petitioner's procedural default of his claims on appeal.") (citing *Thompson v. Wilson*, 523 F. Supp. 2d 626, 637 (N.D. Ohio 2007)).

A prejudice analysis is somewhat more complicated as it overlaps with the underlying merits of Petitioner's claim. The Sixth Circuit has approved of proceeding directly to the merits where a procedural default analysis is complex. *See Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) ("We cut to the merits here, since the cause-and-prejudice analysis adds nothing but complexity to the case.") (citing *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003). Because the issue of prejudice to overcome any procedural default in this case overlaps with the underlying merits analysis, the undersigned therefore turns to the merits of Petitioner's sole ground for relief.

Merits

Petitioner contends the denial of his delayed appeal violated his due process and equal protection rights when he was not informed by the trial court, or trial counsel, of his right to appeal, or his right to counsel on direct appeal. (Doc. 1, at 5). Respondent contends Petitioner is not entitled to relief.

At the outset, the undersigned notes Respondent does not dispute Petitioner's assertion that he was not informed of a right to appeal or right to counsel on direct appeal. And, the undersigned's

7

review of the transcripts reflects that the trial court made no mention of Petitioner's appellate rights. *See* Ex. 19, Doc. 5-1 (plea and sentencing transcripts).[2]

There is no constitutional right to an appeal a criminal conviction. *Goeke v. Branch*, 514 U.S. 115, 119 (1995). However, once a state grants the right to appeal, it must follow procedures comporting with the Due Process Clause of the Fourteenth Amendment. *Evitts v. Lucey*, 469 U.S. 387, 403 (1985).

Due process is violated when a convicted defendant is not given the right to appeal "by reason of his lack of knowledge of his right and the failure of his counsel or the court to advise him of his right to appeal with the aid of counsel." *Jacobs*, 265 F.3d at 419 (quoting *Goodwin v. Cardwell*, 432 F.2d 521, 522-23 (6th Cir. 1970)); *cf. Peguero v. United States*, 526 U.S. 23, 24 (1999) (holding, in the context of a § 2255 petition, "a district court's failure to advise the defendant of his right to appeal does not entitle him to habeas relief if he knew of his right and hence suffered no prejudice from the omission"). Moreover, the Supreme Court has addressed the procedural requirements for indigent defendants in an appeal of right on multiple occasions. These include the right to a transcript (*Griffin v. Illinois*, 351 U.S. 12, 18 (1956)), the right to counsel (*Douglas v. California*, 372 U.S. 353, 356-37 (1963)) and the right to effective assistance of counsel (*Evitts*, 469 U.S. at 393). Although the Supreme Court has not specifically ruled on whether a defendant who has only a limited right of appeal is entitled to notice of that right, another district court persuasively explained:

---

2. The only reference to the appellate process in the transcript is defense counsel's comment, *as to Petitioner's co-defendant* only, at the end of the sentencing: "Your Honor, I'm also going to ask that the costs be waived, as well. Obviously, he's indigent, as well as it's his desire to talk to an appellate lawyer. And he's indigent at this time, even though his appellate rights are very limited, if any, at this point, Your Honor." (Ex. 19, Doc. 5-1, at 184). The trial court responded: "All right. Your request will be denied." *Id.* at 185.

The right of notice is more fundamental than the rights previously guaranteed by the Supreme Court. Precedent therefore dictates that failure to inform an indigent defendant of their appellate rights violates due process. Respondent further notes that a defendant is not necessarily denied a constitutional right when a state court denies a request for delayed appeal. However, due process rights are implicated when a delayed appeal is the result of a lower court's failure to ensure that an indigent defendant's appellate rights are protected.

* * *

When a defendant pleads guilty he limits his options to appeal, but certain appellate avenues remain open. The Supreme Court has previously stressed that an indigent defendant must be afforded certain procedural protections so that they may properly pursue their appellate rights. *See Griffin*, 351 U.S. 12, 76 S.Ct. 585, right for an indigent defendant a transcript for pursing their appeal; *Douglas*, 372 U.S. 353, 83 S.Ct. 814, indigent defendants have a right to counsel for their first appeal; *Evitts*, 469 U.S. 387, 105 S.Ct. 830, all defendants have the right to effective assistance of appellate counsel. These rights all presuppose that the defendant is informed of the appellate rights. Due process is offended if a defendant who pleads guilty is not made aware of his right to appeal. This proposition is unaffected by the lack of an explicit constitutional requirement.

*Wolfe*, 267 F. Supp. 2d at 747, 750; *but see Moss v. Warden, Lebanon Corr. Inst.*, 2010 WL 3703273, at *3-4 (S.D. Ohio) ("While the extension of *Evitts, Douglas*, and *Griffin* to a due process right to notice of state appeal rights would certainly be logical, it is not an extension which is 'clearly established' by holdings of the United States Supreme Court . . . . Because there is no clearly established federal constitutional right to notice of state appellate rights and because, in any event, Petitioner acknowledged in writing that he understood those rights, his first Ground for Relief is without merit."), *report and recommendation* adopted by 2010 WL 3703284.

Courts have found due process violations where a defendant is denied a right to delayed appeal, when the reason for the delay is a lower court's failure to ensure that an indigent defendant's appellate rights are protected. *See Wolfe*, 267 F. Supp. 2d at 749-50; *McIntosh*, 632 F. Supp. 2d at 739; *Roberts v. Gansheimer*, 2009 WL 1607600, at *6-7 (N.D. Ohio) ("The state appellate court's decision to summarily deny his delayed appeal in the face of the trial court's

failure to inform him of his right to appeal deprived him of his constitutionally protected right to appeal. This decision to deny the delayed appeal despite the trial court's failure to inform him of his right to appeal was also contrary to clearly-established Supreme Court precedent, which mandates that convicted defendants be apprised of this right.").

However, relying on *Peguero*, 526 U.S. at 24, courts within the Sixth Circuit have also found  such a claim cannot succeed if the petitioner otherwise had personal knowledge of that right. *See, e.g., Jackson v. Sloane*, 2014 WL 4472623, at *15 (N.D. Ohio) (finding petitioner had previously exercised his right to appeal with counsel in prior cases and thus could not "reasonably argue that he was ignorant of his rights"); *Cleary v. Clipper*, 2018 WL 1515703, at *3 (N.D. Ohio) (finding that "even if the trial court or counsel did not advise him of his right to appeal, the record does not support a claim that he was ignorant of his appellate rights" where the petitioner had signed a plea form acknowledging his right to appeal and the timeframe in which to do so), *report and recommendation adopted by* 2018 WL 1489020. Respondent does not assert that Petitioner was otherwise aware of a right to appeal.

Further, courts within this circuit applying Ohio law have found there can be no due process violation based on a trial court's failure to inform, if there was no underlying right to appeal. *See Thompson v. Sheets*, 2009 WL 2176050, at *2 (N.D. Ohio) ("if no right to appeal exists, it is axiomatic that due process is not violated if a defendant is not informed of a right to appeal"); *see also Holcomb* v. *Wilson,* 2008 WL 2568303, at *3 (N.D. Ohio); *Johnson v. Lazaroff*, 2015 WL 9591501 (N.D. Ohio), *report and recommendation adopted by* 2015 WL 9583032. Specifically, these cases address an Ohio statute regarding jointly recommended sentences, which provides:

> A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge.

Ohio Rev. Code § 2953.08(D)(1).[3] The Ohio Supreme Court has explained the purpose of the statute in conjunction with what explanation is required from the sentencing judge:

> Porterfield's sentence was entered pursuant to a plea bargain in which Porterfield agreed to the precise sentence that was imposed. "A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." R.C. 2953.08(D). Porterfield's sentence was authorized by law, was recommended jointly by him and the prosecution, and was imposed by a sentencing judge. Pursuant to R.C. 2953.08(D), Porterfield's sentence is not subject to review. *Comer* cannot be applied here. The General Assembly intended a jointly agreed-upon sentence to be protected from review precisely because the parties agreed that the sentence is appropriate. Once a defendant stipulates that a particular sentence is justified, the sentencing judge no longer needs to independently justify the sentence.

*State v. Porterfield*, 106 Ohio St. 3d 5, 9 (Ohio 2005).

Analyzing Ohio law, the *Thompson* court found "[s]tate courts have consistently interpreted these statutes to mean that there is no requirement to advise a defendant of a right to appeal from a plea agreement containing a jointly recommended sentence." 2009 WL 2176050, at *2 (citing *Jackson v. Sheets*, 2006 WL 3759700 (S.D. Ohio) (citing *State v. White*, 2003 WL 22451372, at *1 (Ohio Ct. App.); *State v. Middleton*, 2005 WL 406208, at *3 (Ohio Ct. App.); *State v. Bryant*, 2005 WL 1532617, at *3 (Ohio Ct. App))); *see also Johnson*, 2015 WL 9591501, at *7 (relying on *Thompson* and finding that where there was no requirement under Ohio law to advise a defendant of a right to appeal a jointly recommended sentence, "counsel could not be found ineffective for failing to advise Johnson to file a futile appeal", and therefore ineffective assistance of counsel could not serve as cause to overcome default of other claims). That is, because there is no right to appeal a jointly recommended sentence, there is no requirement that a trial court inform a defendant of that right.

---

3. "[A] sentence that is within the authorized statutory ranges for the offenses and comports with all mandatory sentencing provisions is authorized by law." *State v. Grant*, -- N.E. 3d --, 2018 WL 2084930, at *3 (Ohio Ct. App.)

Respondent argues this case is analogous to *Thompson*. *See* Doc. 5, at 10 ("[T]he trial court did not have a duty to inform Caraballo of any right to appeal his agreed sentence since Ohio law precludes an appeal where an agreed sentence has been imposed, as is the case here."). Petitioner contends his case is factually distinguishable. Although this case presents a slightly more complex factual situation than that in *Thompson*, the undersigned recommends the Court find Petitioner is not entitled to relief.

Petitioner's original change of plea and sentencing hearing was held on December 16, 2014. *See* Ex. 19, Doc. 5-1, at 64-90 (transcript). The trial judge noted the hearing pertained to case number 580572, *id* at 65, the case at issue in the present habeas petition, *see* Doc. 1, at 1. The plea agreement between the state and Petitioner required a guilty plea to Count 10 (as amended to delete a forfeiture specification regarding a BMW), and to Count 13 as charged. (Ex. 19, Doc. 5-1, at 66). In exchange, the state agreed to nolle the remaining counts in the indictment, and the parties agreed to a sentence of ten years imprisonment. *Id.* at 66-67. The transcript reflects this joint recommended sentence:

| | |
|---|---|
| [PROSECUTOR]: | . . . There is an agreed ten years in prison on this case, no early release, it's a mandatory ten years. . . . |
| THE COURT: | So it's an agreed recommended ten? |
| [PROSECUTOR]: | Correct. |
| THE COURT: | All right, First, Mr. Bruner, is that consistent with your understanding of the nature of the plea agreement at this point in time? |
| [DEFENSE COUNSEL]: | Yes, it is, Your Honor. |
| | * * * |
| THE COURT: | All right. Now let's talk about a couple other things here. |

12

> First of all, it is agreed that the sentence that has been reached, if you will, agreed to between your attorney and the State, they're recommending to me that I impose a ten-year sentence for all of this; do you understand that?
>
> THE DEFENDANT:        Yes, sir.
>
> THE COURT:        And my inclination at this point in time is to go along with that recommendation, but you need to understand that I don't have to, if I chose not to. If that's the case I could give you a minimum sentence of four years, but I could also give you a maximum consecutive sentence, which in this case would be - - the maximum sentence I could give you on Count 10 is 12 years, plus an additional three years on Count 13, for a total of 15 years; do you understand that?
>
> THE DEFENDANT:        Yes, sir.

(Ex. 19, Doc. 5-1, at 66-67, 76-77).

Following a colloquy, Petitioner pleaded guilty to Counts 10 and 13, as well as the remaining attached specifications. *Id.* at 78-81. The trial court accepted Petitioner's pleas. *Id.* at 81. The court then explained its intended sentence:

> THE COURT:        All right. Well, after considering the purposes and principles set forth in felony sentencing, I will find that prison is consistent with those purposes and principles and . . . .
>
> And I will accept the ten-year recommended sentence. . . .
>
> Just to clarify, I am going to impose the ten-year sentence on Count 10.
>
> [PROSECUTOR]:        Judge, I think you have to go nine on the F-1 and then plus the one year.
>
> THE COURT:        Thank you, Miss Ellis. So we'll do that. It will be nine years on the underlying sentence, prior to and consecutive to the one year for the firearm

> specification. And I'm going to impose a three year sentence on Count 13. And I'll run those, that three-year sentence concurrent with the underlying nine years, but, again, consecutive to the one year on the firearm specification.

*Id.* at 87-89. During this proceeding, defense counsel also asked the Court to run Petitioner's sentence concurrently with a seven-year sentence he was currently serving on a case from Lake County. *Id* at 82. The court declined to do so. *Id.* at 88, 90.

Following that hearing, the trial court issued a journal entry describing Petitioner's change of plea, and noting "sentencing [was] to be scheduled upon resolution in case 591528." (Ex. 3, Doc. 5-1, at 18).

On June 18, 2015, the trial court held a change of plea hearing in case number 591528 for Petitioner and a co-defendant. (Ex. 19, Doc. 5-1, at 91-147). At the outset, the trial judge noted:

THE COURT: . . . So, Mr. Caraballo, I'll talk to you just briefly, again, for a moment, on that notion of what's the end result here, right. You know that you and I have Case 580572, a case that you previously pled to a similar charge. I don't have that case immediately in front of me here, but it's at least a felony one drug trafficking case, if memory serves.

[DEFENSE COUNSEL]: That's correct, Your Honor.

THE COURT: It was a Count 10 on that case. It looks like Count 10 and Count 13. All right. I'm sure you recall this, but if he hasn't already told you, I will tell you the rest of the story, which is to say that you know that you and I had a sentencing on that. I issued a sentence, and then after the sheriffs dropped you down to the holding cell, your lawyer continued his advocating on your behalf and beat me up pretty good, such that I was going to correct or amend your sentencing, and that's when this second case came up.

What your lawyer has come up with now, in terms of the State of Ohio is - - my understanding is that it is an agreed recommended sentence between the State

14

|  | of Ohio and Mr. Bruner that for all of these cases, so that it is the two cases that I have in front of me, plus the case you're serving time on out of - - is it Lake County? |
|---|---|
| [DEFENSE COUNSEL]: | Yes, Your Honor. |
| THE COURT: | - - it's a total of 18 years. Is that what your understanding is at this point? |
| [PETITIONER]: | Yes. |
| THE COURT: | All right. So I want you to hear it from me as well. Now, so through this process I still have to advise you, I'm required by law to advise you of what is your maximum sentence that I could give, which is probably going to be a very long time. But I'm telling you that absent something extraordinary at this point in time, I will go along with the agreed or recommended sentence between your lawyer and the prosecutor. Is that what your understanding is as well? |
| [PETITIONER]: | Yes. |
| THE COURT: | All right. So that's where we're at. |
| [PROSECUTOR]: | Judge, I don't have any recommendation on this, okay, on this count. |
| THE COURT: | I thought we had an agreed recommended sentence of 18 years on this? Or is this the one where - - |
| [PROSECUTOR]: | I cannot, by Tim McGinty, agree to anything. |
| THE COURT: | So the prosecutor - - |
| [PROSECUTOR]: | Does not agree to that. If the Court wants to impose that, it will be over our objection, but that's for the record what I have to do. |
| THE COURT: | Thank you, Mr. Gutierrez. I didn't want to speak for you. Mr. Bruner. |
| [DEFENSE COUNSEL]: | Let me just put on the record, Your Honor, that prior to Mr. Gutierrez having discussions with Mr. |

15

|  | McGinty about this, it was my understanding that the state would offer Mr. Caraballo 18 years, and that basically was our understanding between us, until he had to get the approval of his boss, Mr. McGinty. |
|---|---|
| [PROSECUTOR]: | That is correct, Your Honor. That is a correct rendition. |

* * *

|  |  |
|---|---|
| THE COURT: | So, in any event, Mr. Caraballo, while it's not an agreed sentence on behalf of the State, they're not opposed to me imposing that. I have so much as told your lawyer that I will go along with that 18-year sentence. Do you understand that? |
| [PETITIONER]: | Yes. |

* * *

|  |  |
|---|---|
| THE COURT: | All right. So, gentlemen, let's talk here for a moment about what is your worst case scenario. |
|  | So, Mr. Caraballo, let's just talk with you for a moment. First of all, I know that you're serving, what, a seven-year sentence in Lake County? |
| [PETITIONER]: | Yes. |
| THE COURT: | And in Case 580572, the thing that we did not end up journalizing - - |
| [DEFENSE COUNSEL]: | No, Your Honor, we did not. |
| THE COURT: | Right. So in that case . . . 580572, that's an F-1, plus a one-year spec, so it's 4 to 11 on that. Then Count 13, which is an F-3. |
|  | All right. Mr. Caraballo, if I have this calculated out correctly, in Case 580572, if I gave you the maximum sentence I could on that case alone, that would be 15 years on that case. And then in this current case, 591528, pleading guilty to one felony of the first degree, nine felonies of the second degree, three felonies of the third degree, two felonies of the fourth degree, and six felonies of the fifth degree, and |

16

|  | if I got that calculated correctly that's 116 years. No, it's 101, plus the 15 on the other case. Do you understand that, sir? |
|---|---|
| [PETITIONER]: | Yes. |
| THE COURT: | All right. |
| [DEFENSE COUNSEL]: | That's not counting his Lake County seven years, right? |
| THE COURT: | Correct. It would be another seven years on top of that, the Lake County time. |
|  | And, Mr. Caraballo, if I have this calculated out correctly, for all of these offenses, you could be fined up to $230,000. Do you understand that, sir? |
| [PETITIONER]: | Yes. |

(Ex. 19, Doc. 5-1, at 96-100, 127-29). During that hearing, Petitioner pleaded no contest to the charges in case number 591528. *Id.* at 131-35.

On June 30, 2015, the trial court held a sentencing hearing in both cases, again with Petitioner's co-defendant. *Id.* at 148-86. Therein, counsel discussed the plea negotiations:

| [DEFENSE COUNSEL]: | Well, on behalf of both Defendants, Your Honor, I'm certainly sorry for what occurred. With regard to sentencing, we've had numerous negotiations between myself on their behalf and the State of Ohio with Mr. Gutierrez and the investigators in this case. It's my understanding that the Court is willing to sentence Mr. Caraballo to 18 years with regard to his two cases here, 591528, as well as 580572, as well as the sentencing he's already received from Lake County, that being 7 years, that would be included all in the 18 year sentence, and would be one 18-year sentence for those three matters. . . . |
|---|---|
|  | * * * |
| [PROSECUTOR]: | Your Honor, that is correct of what [sic] Mr. Bruner said. However, I've been instructed by my boss, the |

17

> county prosecutor, Mr. McGinty, to - - that is to say, not to go along with the discussions that we had. I am required by my boss to ask for a lengthy sentence. And on both of these individuals the State would ask the Court to sentence both of them to 20 years.

*Id.* at 151-52. After testimony from victims and both defendants, the Court sentenced Petitioner to "a 10-year sentence" on Count 10 and a three-year concurrent sentence on Count 13 in case number 580572. *Id.* at 176, 178. Next, he sentenced Petitioner to an eight-year sentence on Count 1 in case number 591528, "which will be run prior to and consecutive to the 10-year sentence . . . receive[d] in Case 580572, for an aggregate of an 18-year sentence", and "concurrent with the current time [Petitioner was] serving." *Id.* Later, the trial court noted he would "make sure that the journal entry reflects that this aggregate 18-year sentence is to be served concurrent with his current sentence he's serving in Lake County." *Id.* at 181.

The journal entry subsequently filed in case number 580572 states "a prison sentence of 10 years is imposed on Count 10, to run concurrent with 3 year sentence on Count 13 for a pris[]on term of 10 years in this case." (Ex. 4, Doc. 5-1, at 19). This entry was corrected with a *nunc pro tunc* entry in October 2015 to reflect "a pris[]on sentence of 9 years is imposed on the underlying charge to run consecutive with 1 year on the fire arm [sic] spec., to run concurrent with 3 year sentence on count 13 for a pris[]on term of 10 years in this case." (Ex. 5, Doc. 5-1, at 20).

In determining whether a sentence imposed was jointly recommended for purposes of the statute (and thus, whether an appeal is permitted), Ohio courts look to the record. For example, in *State v. Childers*, 2015 WL 7571728, at *2-3 (Ohio Ct. App.), the court examined a record in which the prosecutor and defense counsel stated agreement regarding a sentencing recommendation, but later in the proceeding the defendant expressed confusion regarding the sentence. *Id.* at *3. The state appellate court explained:

18

> We also note that there was no mention at the sentencing hearing that the sentence was jointly recommended, or that the parties had negotiated, bargained for, or even discussed sentencing prior to the hearing. In short, we cannot gather from the plea hearing transcript that an agreed sentence existed; and the sentencing hearing transcript is equally confusing and indefinite as to whether a sentencing agreement existed between the parties.

> Because we cannot conclude that an agreed sentence existed between the parties in this case, we will address the merits of Childers's appeal. *See State v. Robinson*, 4th Dist. Lawrence No. 13CA18, 2015-Ohio-2635 ¶ 33 (concluding that we would address the merits of appellant's assignment of error where it was unclear whether an agreed sentence existed).

*Id.* at *3. Similarly, in *State v. Robinson*, the appellate court's conclusion that a sentence was not jointly recommended turned on "the conflicting remarks between appellant and her trial counsel" such that the court "believe[d] it[] [was] only fair to assume the sentence was not agreed upon." 2015 WL 3991050, at *7 (Ohio Ct. App.). That is, these cases turn primarily on whether the *defendant* agreed to the sentence. And where it is ambiguous, Ohio courts permit review of appellate issues.

By contrast, here at the plea hearing, there was significant evidence that a negotiated and bargained for agreement existed between the parties as to case number 580572. *See* Ex. 19, Doc. 5-1, at 65-90 (change of plea hearing with discussion of jointly recommended sentence). And Petitioner expressed no confusion or reservations about the agreed ten-year aggregate sentence agreed to at his change of plea hearing (Ex. 19, Doc. 5-1, at 65-90), and ultimately imposed by the trial judge at the joint sentencing with case number 591528 (Ex. 19, Doc. 5-1, at 176-78; Exs. 4-5, Doc. 5-1, at 19-20). This stands in stark contrast to the situation in *Childers*, where the court found: "At the plea hearing, neither party made any sentencing recommendations, or announced any agreement or negotiations regarding sentencing." 2015 WL 7571728, at *2.

Although as set forth above, the prosecutor explicitly did not agree to the combined eighteen-year sentence to resolve both cases 580572 and 591528, together with a seven year

sentence Petitioner was serving from another court, the record reflects this disagreement was over case number 591528—the case not at issue here. *See* Ex. 19, Doc. 5-1, at 98 ("Judge, I don't have any recommendation on this, okay, *on this count*.") (emphasis added). Further, the sentence imposed in the case at issue here was exactly the sentence included in the joint recommendation at Petitioner's original change of plea—an aggregate ten years. *See* Exs. 4-5, Doc. 5-1, at 19-20; Ex. 19, Doc. 5-1, at 66-89. And there is no ambiguity in the record as to Petitioner's agreement to that sentence. As such, because Petitioner's sentence in case number 580572—was a jointly recommended sentence, authorized by law, and imposed by the trial court pursuant to Ohio Revised Code § 2953.08(D)(1), he had no right to appeal.

In his Reply, Petitioner contends he "did not plead guilty, but pleaded *no contest*" and thus this "preserved his right to appeal under Crim. R. 12", which permits an appeal regarding rulings on pretrial motions. (Doc. 8-1, at 9) (citing Ohio Crim. R. 12). He therefore contends he could have challenged "the motion for suppression of evidence that was filed prior to sentencing". *ID.* at 10. Petitioner, however, is conflating the two cases for which he was sentenced simultaneously. In the case before this Court on habeas review—case number 580572—Petitioner pleaded guilty. *See* Ex. 19, Doc. 5-1, at 66-67, 76-81, 87-89. He pleaded no contest to the charges in case number 591528. *See* Ex. 19, Doc. 5-1, at 96-100, 131-35. The trial court noted this distinction during Petitioner's second change of plea, and at sentencing. *See* Ex. 19, Doc. 5-1, at 96 ("You know that you and I have Case 580572, a case that you previously pled to a similar charge."); *id.* at 148-49 ("Mr. Caraballo is here for sentencing in two cases, Case 591528, where on a prior date he pled to a number of counts which we'll get to eventually. And then also in case 580572, and that case he previously pled guilty to Count 10, which is a felony one drug trafficking offense, and also to Count 13, which is a felony three, weapons while under disability offense."). Moreover, in his

Petition, Petitioner challenges *only* the state court determination on case number 580572. *See* Doc. 1, at 1. As such, Petitioner's argument regarding a "no contest" plea is inapplicable.

Therefore, he can show no prejudice from the failure of the trial court (or trial counsel) to inform him of his non-existent appellate rights. *See Thompson*, 2009 WL 2176050, at *2; *Johnson*, 2015 WL 9591501, at *7. Petitioner has not shown the state court decision to deny his delayed appeal is contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d). As such, the undersigned recommends Ground One be denied on the merits.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Court find Ground One fails on the merits, and the Petition be denied.

s/James R. Knepp, II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).